1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

SAN JOSE DIVISION

7

8    WAYNE CHUN LIM,                          Case No.  18-cv-07519-VKD

9                    Plaintiff,

10         v.                                 **ORDER RE CROSS-MOTIONS FOR
                                              SUMMARY JUDGMENT**

11    ANDREW SAUL,                            Re: Dkt. Nos. 15, 17

12                    Defendant.

13

14         Plaintiff Wayne Chun Lim appeals a final decision of the Commissioner of Social Security

15    ("the Commissioner") denying his application for disability insurance benefits under Title II of the

16    Social Security Act, 42 U.S.C. §§ 1381, et seq.  The parties have filed cross-motions for summary

17    judgment.  Dkt. Nos. 15, 17.

18         The matter was submitted without oral argument.  Upon consideration of the moving and

19    responding papers and the relevant evidence of record, for the reasons set forth below, the Court

20    grants in part and denies in part Mr. Lim's motion for summary judgment and grants in part and

21    denies in part the Commissioner's cross-motion for summary judgment.[1]

22    **I.    BACKGROUND**

23         Mr. Lim seeks disability benefits beginning October 30, 2009.[2]  AR 16.  He applied for

24

25    _____

      [1] All parties have expressly consented that all proceedings in this matter may be heard and finally
26    adjudicated by a magistrate judge.  28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 8, 11.

27    [2] Mr. Lim's application for benefits states an onset date of September 15, 2009.  However, at the
      hearing before the ALJ, Mr. Lim amended his onset date to October 30, 2009.  The ALJ's opinion
28    gives the onset date as September 15, 2009 without reference to this amendment.  *Compare* AR 16
      *with* AR 29–30.

(left margin, vertical text) United States District Court  Northern District of California

benefits on April 4, 2016. *Id.* Following a hearing, the Administrative Law Judge ("ALJ") issued a decision denying benefits on May 8, 2018. AR 16–2. The ALJ first determined that Mr. Lim remained insured through September 30, 2013. AR 16. The ALJ then found that Mr. Lim had one severe impairment: history of headaches. AR 18. The ALJ determined that Mr. Lim's mental impairments of depression, bipolar disorder, and schizoaffective disorder were not severe. *Id.* The ALJ concluded that Mr. Lim did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. AR 21. The ALJ then determined that Mr. Lim had the residual functional capacity to perform a full range of work at all exertional levels, with the sole limitation of no concentrated exposure to hazards. AR 21. The ALJ concluded that Mr. Lim was able to perform his past relevant work of consultant and manager (sales) as that work is generally performed, and thus he was not disabled. AR 23.

The Appeals Council denied Mr. Lim's request for review of the ALJ's decision. AR 1–3. Mr. Lim filed this action on December 13, 2018. Dkt. No. 1.

## II.      STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has the authority to review the Commissioner's decision to deny benefits. The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995). In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance—it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523; *see also Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992). When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257; *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Where evidence exists to support more than one rational interpretation, the Court must defer to the decision of the Commissioner. *Moncada*, 60 F.3d at 523; *Drouin*, 966 F.2d at 1258.

In determining whether a claimant has a disability within the meaning of the Act, an ALJ

United States District Court
Northern District of California

follows a five-step sequential analysis:

At step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i) (2012). If so, the claimant is not disabled. If not, the analysis proceeds to step two.

At step two, the ALJ assesses the medical severity of the claimant's impairments. *Id.* § 404.1520(a)(4)(ii). An impairment is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). If the claimant has a severe medically determinable physical or mental impairment, or a combination of impairments, that is expected to last at least 12 continuous months, he is disabled. *Id.* §§ 404.1509, 404.1520(a)(4)(ii). Otherwise, the evaluation proceeds to step three.

At step three, the ALJ determines whether the claimant's impairments or combination of impairments meets or medically equals the requirements of the Commissioner's Listing of Impairments. *Id.* § 404.1520(a)(4)(iii). If so, a conclusive presumption of disability applies. If not, the analysis proceeds to step four.

At step four, the ALJ determines whether the claimant has the residual functional capacity to perform his past work despite his limitations. *Id.* § 404.1520(a)(4)(iv). If the claimant can still perform past work, then he is not disabled. If the claimant cannot perform his past work, then the evaluation proceeds to step five.

At the fifth and final step, the ALJ must determine whether the claimant can make an adjustment to other work, considering the claimant's residual functional capacity, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If so, the claimant is not disabled.

The claimant bears the burden of proof at steps one through four. The Commissioner has the burden at step five. *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001).

### III.   DISCUSSION

Mr. Lim contends that the ALJ erred in several respects: (1) the ALJ erred in finding Mr. Lim's depression, bipolar disorder, schizoaffective disorder, or combination of disorders were not severe impairments at step two, and by finding that Mr. Lim did not meet Listing 12.04 for depressive disorder at step three; (2) the ALJ erred in disregarding the opinions of certain treating

United States District Court
Northern District of California

1  medical providers; (3) the ALJ erred in not calling a medical expert or advisor to assist in

2  establishing the date of disability onset; and (4) the ALJ erred at step five by providing the

3  vocational expert with hypotheticals that did not account for Mr. Lim's non-exertional and mental

4  limitations.  The Court considers each issue below.

5       **A.**    **The ALJ's Assessment of Mr. Lim's Mental Impairments**

6       The ALJ must consider whether a claimant suffers from a "severe" impairment, or

7  combination of impairments.  20 C.F.R. § 404.1520 (2017).  A severe impairment is one that

8  significantly limits a claimant's physical or mental ability to do basic work activities.  *Id.*

9  § 404.1520(c).  The ALJ may find an impairment or combination of impairments not severe only

10  if the evidence establishes a slight abnormality that has no more than a minimal effect on an

11  individual's ability to work as "clearly established by medical evidence."  *Smolen v. Chater*, 80

12  F.3d 1273, 1290 (9th Cir. 1996) (internal quotations and citation omitted).  If a severe impairment

13  exists, all medically determinable impairments must be considered in the remaining steps of the

14  sequential analysis, regardless of whether any such impairment, if considered separately, would be

15  of sufficient severity.  20 C.F.R. § 404.1523 (2017); *Smolen*, 80 F.3d at 1290 (the ALJ "must

16  consider the combined effect of all of the claimant's impairments on her ability to function,

17  without regard to whether each alone [i]s sufficiently severe").  If the ALJ erroneously determines

18  that an alleged impairment is not "severe," the reviewing court must determine whether the error

19  was harmless.  *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir.2007); *Burch v. Barnhart*, 400 F.3d

20  676, 679 (9th Cir. 2005).

21       Where there is evidence of a mental impairment that allegedly prevents a claimant from

22  working, additional regulations assist the ALJ in determining the severity of the mental

23  impairment, establishing a "special technique at each level in the administrative review process."

24  20 C.F.R. § 404.1520a(a) (2017).  First, the ALJ evaluates the claimant's "symptoms, signs, and

25  laboratory findings" to determine whether the claimant has a "medically determinable mental

26  impairment."  *Id.* § 404.1520a(b)(1).  Second, if the claimant has a "medically determinable

27  mental impairment," the ALJ assesses the degree of the claimant's functional limitation in four

28  "functional areas."  *See id.* § 404.1520a(c)(3); *see also* Social Security Ruling ("SSR") 96-8p,

1996 WL 374184, at *4 (July 2, 1996) ("[F]ailure to first make a function-by-function assessment of the individual's limitations or restrictions could result in the adjudicator overlooking some of an individual's limitations or restrictions.  This could lead to an incorrect use of an exertional category to find that the individual is able to do past relevant work as it is generally performed and an erroneous finding that the individual is not disabled.")[3].  At the time of the ALJ's decision, the four functional areas were: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself.  20 C.F.R. § 404.1520a(c)(3) (2017).[4]  The claimant's limitations in these areas are rated on a five-point scale: "[n]one, mild, moderate, marked, and extreme."  *Id.* § 404.1520a(c)(4).  Third, based on these limitations, the ALJ determines whether the claimant has a severe mental impairment and whether it meets or equals a listed impairment.  *See id.* § 404.1520a(d)(1)-(2); 20 C.F.R. pt. 404, Subpt. P., App. 1 § 12.00 (Aug. 22, 2017).  Finally, if the ALJ determines that the claimant has a severe mental impairment that neither meets nor equals any listing, the ALJ must assess the claimant's residual functional capacity.  20 C.F.R. § 404.1520a(d)(3) (2017); SSR 96-8p, 1996 WL 374184, at *4.

Mr. Lim argues that the ALJ erred at step two in determining that, during the relevant time period, Mr. Lim did not suffer from severe impairments of depression, bipolar disorder, or schizoaffective disorder, whether those impairments are considered singly or in combination with each other or his headaches.  Dkt. No. 15 at 7–8; Dkt. No. 18 at 3.  Mr. Lim also contends that the ALJ erred at step three in determining that he did not meet Listing 12.04 for depressive disorder.  Dkt. No. 15 at 8.

### 1.    Step two: Severity assessment

Although the ALJ's decision makes no express findings on the existence of medically

---

[3] "SSRs do not have the force of law.  However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference.  We will not defer to SSRs if they are inconsistent with the statute or regulations."  *Holohan v. Massanari*, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted).

[4] 20 C.F.R. § 404.1520a was last amended effective March 27, 2017, and therefore the most current version of this regulation applied at the time the ALJ rendered her opinion on February 26, 2018.  AR 22.

United States District Court
Northern District of California

determinable mental impairments, she appears to have concluded that Mr. Lim's depression, bipolar disorder, and schizoaffective disorder were medically determinable mental impairments. *See* AR 18 (referring to "depression and bipolar disorder" as "medically determinable mental impairments"); AR 20 (referring to all three disorders collectively as "medically determinable impairments"). Neither party contests this conclusion.

In evaluating the severity of Mr. Lim's impairments, the ALJ concluded that Mr. Lim's mental impairments were not severe based on his Global Assessment of Functioning ("GAF") scores, reported improvements in his condition, and only mild limitations in functioning.[5] AR 18–20. The ALJ observed that at the time Mr. Lim first sought treatment in February 2010, he received a GAF score of 61-70 indicating mild symptoms or impairment,[6] and that he continued to score 61-70. AR 18–19. The ALJ also cited other evidence in the medical record suggesting improvement in Mr. Lim's symptoms. AR 19. In particular, the ALJ observed that Mr. Lim's examinations throughout 2010 were normal, that in December 2011 he reported still having bouts of depression but that he was "doing well overall," and that in January 2013, Mr. Lim reported improved symptoms, stating that his "depression is gone." *Id.* With respect to his functional limitations, the ALJ found that Mr. Lim's medically determinable mental impairments caused no more than "mild" limitations in any of the four functional areas and were therefore not severe. AR 19–20.

A review of the record as a whole reflects that the ALJ did not consider all of the evidence concerning Mr. Lim's mental health and functional limitations. For example, the record indicates

---

[5] In assessing the severity of Mr. Lim's mental impairments, the ALJ did not distinguish between depression, bipolar disorder, or schizoaffective disorder. *See* AR 18–20.

[6] A GAF score "is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations." *Willig v. Berryhill*, No. 16-cv-03041-MEJ, 2017 WL 2021369, at *4 n.2 (N.D. Cal. May 12, 2017) (internal quotation marks and citations omitted). "A GAF of 61-70 indicates '[s]ome mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships.'" *Kounitski v. Berryhill*, No. 16-CV-03018-LHK, 2017 WL 5900192, at *6 (N.D. Cal. Nov. 30, 2017) (citing Diagnostic and Statistical Manual of Mental Disorders IV (DSM-IV) 31-34 (4th ed. 2000)).

that Mr. Lim received GAF scores of 61-70 throughout 2010 and into January 2011, and even

scored 75 in March 2010.  AR 1029, 1119, 1126, 1135, 1146, 1157, 1165, 1173, 1181, 1191,

1199.  However, beginning in March 2011 and throughout much of 2012, Mr. Lim consistently

received GAF scores of 51-60, indicating moderate symptoms or impairment.[7]  AR 1210, 1218,

1227, 1236, 1247, 1276, 1297, 1335, 1348, 1374.  And in December 2012, Mr. Lim scored as low

as 41-50, indicating serious symptoms or impairment in functioning.[8]  AR 1308, 1322.

　　　　Other medical evidence reflects that Mr. Lim experienced fluctuations in his mental health.

He began 2010 feeling out of control, hopeless, depressed, angry, irritable, frustrated, and had

fleeting suicidal thoughts, with mostly mild depression symptoms largely throughout 2010.  AR

1029, 1043, 1046, 1118, 1127, 1134, AR 1140–41, 1146, 1154, 1157, 1165, 1171, 1173, 1179,

1181.  In December 2010, he denied feeling depressed and stated that he felt "more even" and that

"my symptoms are better."  AR 1189.  However, his symptoms worsened in 2011, and the record

reflects that he exhibited moderate symptoms of depression through 2011.  AR 1207, 1210, 1218,

1227, 1234, 1236, 1244, 1247.  In October 2011, Jessica Yu, Mr. Lim's treating nurse practitioner,

noted that his "mood and anxiety symptoms have improved," but on November 18, 2011, Mr. Lim

reported increased family and academic stress and stated that his mood "was ok until a few days

ago until I hit this thesis problem."  AR 1260, 1264.  In December 2011, Mr. Lim stated that he

had "moments of depression" but was doing well overall.  AR 1269.  In January 2012, Mr. Lim

denied experiencing depression or suicidal ideation, yet his GAF score indicated moderate

symptoms.  AR 1274, 1276.  In April 2012, Ms. Yu noted that he stated that "the past three

months have been relatively uneventful and that's good."  AR 1283.  At that time, Mr. Lim's GAF

score returned to a mild range, and Ms. Yu scheduled him for a follow-up in six months.  AR

---

[7] "A GAF of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or coworkers)." *Kounitski*, 2017 WL 5900192, at *6 (citing Diagnostic and Statistical Manual of Mental Disorders IV (DSM-IV) 31-34 (4th ed. 2000)).

[8] "A GAF score of 41-50 indicates serious symptoms (suicidal ideation, severe obsessional rituals[,] frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., few friends, unable to keep a job)."  *Kounitski*, 2017 WL 5900192, at *6 (citing Diagnostic and Statistical Manual of Mental Disorders IV (DSM-IV) 31-34 (4th ed. 2000)).

United States District Court
Northern District of California

1283, 1286.  In October 2012, Mr. Lim reported fewer suicidal thoughts but increased anxiety and worse mood.  AR 1294, 1297.  In November 2012, Mr. Lim began exhibiting serious symptoms, including suicidal ideation and reported considering suicide through the use of insulin.  AR 1305, 1308.

On December 7, 2012, Mr. Lim reported that he was contemplating suicide.  AR 1319. Ms. Yu noted in her treatment notes that Mr. Lim reported "suicidal thoughts including the plan to take insulin but denies access to insulin[,] and a suicide plan but denies intent."  *Id.*  Mr. Lim also stated to Ms. Yu, "I said I know better than to act on them (the suicidal thoughts[)]" and felt hopeful that lithium medication would resolve the feelings.  *Id.*  Nevertheless, based on his suicidal thoughts and mood, Ms. Yu placed Mr. Lim on an involuntary mental health hold pursuant to California Welfare & Institutions Code § 5150.  AR 1319–20, 1322, 1329.  Mr. Lim apparently was not hospitalized during the 5150 hold period after stating clearly that he did not intend to act on his suicidal thoughts.  AR 1332.

One week after the 5150 hold, on December 14, 2012, Mr. Lim informed Ms. Yu, "I am better and I'm guessing it's due to the lithium."  AR 1332.  He continued to have intermittent suicidal thoughts but denied a plan or intent to commit suicide.  *Id.*  He also continued to demonstrate moderate depression symptoms.  AR 1332, 1345, 1347.  Mr. Lim saw Ms. Yu twice in 2013 before Mr. Lim's date last insured.  On the first visit in January 2013, Mr. Lim showed significant improvement with a good response to medication.  AR 1359, 1361.  Ms. Yu quoted Mr. Lim as saying, "The lithium has been very effective in treating my depression. . . .  The depression is gone because I can readily get out of bed and I don't have those thoughts (of self harm)."  AR 1359.  However, despite stating that his depression was "gone," Mr. Lim continued to report ongoing symptoms of depression, including problems sleeping, restlessness, poor concentration, and feeling bad about himself.  AR 1359.  On the second visit in August 2013, Mr. Lim again reported mild to moderate depression symptoms, including intermittent passive suicidal ideation. AR 1370; AR 1371 (noting moderately severe depression based on PHQ-9 score); AR 1374 (noting GAF score of 51-60).

The ALJ also erred in considering Mr. Lim's functional limitations.  The ALJ concluded

1   that Mr. Lim was no more than mildly limited in all four functional areas because: he was able to

2   complete his dissertation and receive his doctorate degree during the relevant time period; he lived

3   with his girlfriend of four years; at his February 19, 2010 appointment, he was "pleasant and

4   cooperative" with normal memory, concentration, and attention; and he "had full activities of daily

5   living" during the relevant time period.  *Id.*  This cursory analysis failed to fully address each of

6   the four functional areas and omitted discussion of contrary evidence.

7        For example, the second functional area of interacting with others "refers to the abilities to

8   relate to and work with supervisors, co-workers, and the public," and can include "cooperating

9   with others; asking for help when needed; handling conflicts with others; stating own point of

10   view; initiating or sustaining conversation; understanding and responding to social cues (physical,

11   verbal, emotional); responding to requests, suggestions, criticism, correction, and challenges; and

12   keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or

13   suspiciousness."  20 C.F.R. pt. 404, Subpt. P., App. 1, § 12.00.E(2) (Aug. 22, 2017).  The ALJ

14   does not explain how Mr. Lim's "pleasant and cooperative" demeanor on one occasion in 2010

15   and his cohabitation with his girlfriend demonstrates that he was not significantly limited in his

16   ability to relate to or work with supervisors, co-workers, and the public.  The ALJ's analysis of

17   this functional area ignores evidence in the medical record that Mr. Lim had a strained relationship

18   with family members and generally avoided social interaction.  *See, e.g.*, AR 1264 (reporting

19   increased family stress to Ms. Yu); AR 44–45 (testifying that he has no friends that he sees on a

20   regular basis and that he does not interact with his family members other than a yearly email); AR

21   1134 (reporting some issues with isolating himself, including not going out or returning calls); AR

22   45–46 (testifying that he avoided interactions with others and used his girlfriend as a buffer for

23   social interaction).

24        Similarly, the third functional area of concentrating, persisting, or maintaining pace "refers

25   to the abilities to focus attention on work activities and stay on task at a sustained rate," and can

26   include "[i]nitiating and performing a task that you understand and know how to do; working at an

27   appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding

28   distractions while working; changing activities or work settings without being disruptive; working

United States District Court
Northern District of California

9

United States District Court
Northern District of California

1  close to or with others without interrupting or distracting them; sustaining an ordinary routine and

2  regular attendance at work; and working a full day without needing more than the allotted number

3  or length of rest periods during the day."  20 C.F.R. pt. 404, Subpt. P., App. 1, § 12.00.E(3) (Aug.

4  22, 2017).  The ALJ does not explain how Mr. Lim's "normal memory" and "normal

5  concentration and attention" on a single occasion and his completed doctorate demonstrate that he

6  was not significantly limited in his ability to focus attention on work activities and to stay on task

7  at a sustained rate.  Nor does the ALJ mention Mr. Lim's testimony that he was unable to

8  consistently work on his thesis during the relevant time period for more than one to four days per

9  week.  AR 40–41.

10       In assessing the severity of Mr. Lim's depression, the ALJ erred in relying on GAF scores

11  reflecting mild symptoms or improvements in Mr. Lim's condition, while disregarding other

12  evidence showing more severe impairment and deterioration.  *See Garrison v. Colvin*, 759 F.3d

13  995, 1017 (9th Cir. 2014) ("Cycles of improvement and debilitating [mental health] symptoms are

14  a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated

15  instances of improvement over a period of months or years and to treat them as a basis for

16  concluding a claimant is capable of working.").  Likewise, the ALJ erred in relying on evidence of

17  successful functioning, while ignoring contemporaneous evidence of impaired functioning.  *See,*

18  *e.g.*, *Bautista v. Saul*, No. 18-cv-07693-JCS, 2020 WL 1478327, at *7, 10 (N.D. Cal. Mar. 26,

19  2020) (finding error where ALJ "cherrypicked the medical record, ignoring the evidence that

20  showed that Bautista continued to experience auditory and visual hallucinations even during

21  periods of abstinence"); *Pardini v. Berryhill*, No. 18-cv-04878-JCS, 2020 WL 1245342, at *20

22  (N.D. Cal. Mar. 16, 2020) (finding error where ALJ ignored treatment notes from treating

23  therapist that supported a contrary conclusion).  Most egregiously, the ALJ failed to mention—and

24  apparently did not consider—the evidence of Mr. Lim's 5150 mental health hold and suicidal

25  ideation in December 2012.  Such evidence may reflect severe impairment.  *See, e.g.*, *Washington*

26  *v. Berryhill*, No. 17-cv-07373-VKD, 2019 WL 4221596, at *20 (N.D. Cal. Sept. 5, 2019) (finding

27  error where ALJ rejected treating physician's opinion based on "no significant mental status

28  findings" where claimant had been placed on 72-hour involuntary mental health hold).  This was

1    not the only occasion on which Mr. Lim expressed thoughts of suicide, and the ALJ's failure to

2    consider such evidence cannot be dismissed as harmless error.  *Tommasetti v. Astrue*, 533. F.3d

3    1035, 1038 (9th Cir. 2008) (ALJ's error is harmless only when it is clear from the record that the

4    error was "inconsequential to the ultimate nondisability determination") (internal quotation marks

5    and citation omitted).

6          Accordingly, because the ALJ failed to consider the medical record as a whole and

7    selectively cited only portions of the record indicating improvement, the Court finds that the

8    ALJ's determination that Mr. Lim's mental impairments were not severe was not supported by

9    substantial evidence.  The Court grants Mr. Lim's summary judgment motion and denies the

10   Commissioner's summary judgment motion on this issue.

11                    **2.       Step three: Listing 12.04**

12         The ALJ concluded that Mr. Lim did not have an impairment or combination of

13   impairments that met or medically equaled the severity of one of the listed impairments in 20

14   C.F.R. Part 303, Subpart 4, Appendix 1.  AR 20.  Mr. Lim contends that the ALJ erred in finding

15   that he did not meet the requirements of Listing 12.04 for depressive, bipolar, and related

16   disorders.  Dkt. No. 15 at 8.  He argues that he satisfies the five requirements of Listing 12.04

17   paragraph A (suicidal thoughts, sleep disturbance, trouble concentrating or thinking, feelings of

18   worthlessness, and decreased energy) and paragraph B, because he experienced marked limitations

19   in his ability to interact with others and in concentrating, persisting, or maintaining pace.  *Id.*

20         Mr. Lim argues that the Court should reverse the ALJ's decision regarding whether he

21   meets Listing 12.04.  Dkt. No. 15 at 8–9.  However, the portions of the record on which Mr. Lim

22   relies as evidence of his "marked" limitations in interacting with others and in concentrating,

23   persisting, or maintaining pace do not clearly show that he was necessarily markedly limited.  A

24   "marked" limitation means that a person's ability to function independently, appropriately,

25   effectively, and on a sustained basis in a particular functional area is "seriously limited."  20

26   C.F.R. pt. 404, Subpart. P., App. 1, § 12.00.F(2)(d) (Aug. 22, 2017).  Mr. Lim points to evidence

27   that his attention was "distractible" at two appointments with Ms. Yu on December 7, 2012 and

28   December 14, 2012.  AR 1322, 1334.  On one of those occasions, Mr. Lim's self-reported patient

United States District Court
Northern District of California

1    health questionnaire[9] indicated that he had experienced trouble concentrating nearly every day for

2    the previous two weeks and that his problems made it "very difficult" for him to do his work, take

3    care of things at home, and get along with others.  AR 1332, 1342.  His overall questionnaire score

4    indicated moderate depression symptoms.  *Id.*  None of the cited portions of the record provides

5    any significant insight into Mr. Lim's ability to interact with others.  Mr. Lim has not

6    demonstrated that "distractible" attention and self-reported trouble concentrating for two-weeks

7    during the relevant time period spanning October 30, 2009 to September 30, 2013 necessarily

8    requires a finding of marked limitation sufficient to meet Listing 12.04.

9    However, as explained above, the ALJ did not consider the evidence of record as a whole

10   in assessing Mr. Lim's mental impairments.  20 C.F.R. § 404.1520a(e)(4) (2017) ("[T]he written

11   decision must incorporate the pertinent findings and conclusions based on the technique" and it

12   "must show the significant history, including examination and laboratory findings, and the

13   functional limitations that were considered in reaching a conclusion about the severity of the

14   mental impairment(s).").  Because the ALJ erred at step two in evaluating Mr. Lim's functional

15   limitations and the severity of his medically determinable mental impairments, the ALJ's

16   conclusion regarding whether Mr. Lim's impairments met the Listings, whether alone or in

17   combination, is not supported by substantial evidence and therefore must be reconsidered on

18   remand.

19   The Court grants in part and denies in part Mr. Lim's motion for summary judgment on

20   this point and grants in part and denies in part the Commissioner's motion for summary judgment.

21   **B.    Evaluation of Medical Source Opinions**

22   Mr. Lim contends that the ALJ erred in giving little weight to the opinion of Mr. Lim's

23

24   [9] This questionnaire is the Patient Health Questionnaire ("PHQ-9").  The PHQ-9 "is a[n]
     instrument for making criteria-based diagnoses of depressive and other mental disorders
25   commonly encountered in primary care."  *Norman v. Berryhill*, No. 17-CV-04108-SI, 2018 WL
     4519952, at *2 (N.D. Cal. Sept. 19, 2018) (citing Kurt Kroenke, MD, et al., *The PHQ-9: Validity*
26   *of a Brief Depression Severity Measure*, 16 J. Gen. Intern. Med. 606 (2001)) (internal quotation
     marks omitted).  A score of 21 correlates to a "severe" level of depression.  *Id.*  Mr. Lim requests
27   that the Court take judicial notice of an article concerning the PHQ-9.  Dkt. No. 16.  Because the
     Court need not rely on the article in order to decide the cross-motions for summary judgment, Mr.
28   Lim's request for judicial notice is denied as moot.

United States District Court
Northern District of California

1  treating therapist Robin Neville, LCSW, and in failing to consider the opinions of treating nurse

2  practitioner Jessica Yu N.P. and treating psychologist Diane Zacher, Ph.D.  Dkt. No. 15 at 10–13.

3  ### 1.       Treating therapist Robin Neville, LCSW

4      Ms. Neville completed a questionnaire indicating that Mr. Lim had poor or no ability to

5  deal with work stresses or to understand, remember, and carry out detailed or complex job

6  instructions; that he struggled with managing and adapting to unexpected changes; and that he did

7  not have the capacity to engage in full time work.  AR 2432–33.  The ALJ gave this opinion little

8  weight because Ms. Neville rendered this opinion in May 2017, several years after Mr. Lim's date

9  last insured.  AR 21.

10      Mr. Lim concedes that Ms. Neville's opinion post-dated his date last insured, September

11  30, 2013, but argues that her uncontradicted opinion was supported by the record as a whole and

12  thus deserves controlling weight.  Dkt. No. 15 at 10–11 (citing 20 C.F.R. § 404.1527(c)(2);

13  *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008)).  Only an

14  "acceptable medical source" can provide a medical opinion that may be entitled to controlling

15  weight.  SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006); *see also* 20 C.F.R. § 404.1527

16  (2017)[10].  As a licensed clinical social worker, Ms. Neville is not an acceptable medical source,

17  and her opinion is therefore considered "other source" evidence that cannot establish the existence

18  of a medically determinable impairment.  *Turner v. Comm'r of Soc. Sec.*, 613 F.2d 1217, 1223–24

19  (9th Cir. 2010); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).  An ALJ may discount

20  other source testimony if the ALJ "gives reasons germane to each witness for doing so."  *Molina*

21  *v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (discussing 20 C.F.R. § 404.1513(a)) (quotations

22  and citation omitted).  The fact that Ms. Neville's opinion post-dated Mr. Lim's date last insured

23  by four years is a germane reason for giving her opinion little weight, particularly where the

24  record reflects that a state agency medical consultant provided a contradictory opinion.  AR 21;

25  *Turner*, 613 F.2d at 1223–24 (no error in disregarding other source opinion that was given two

26  

27  ───────────────────

28  [10] Because Mr. Lim's claim was filed prior to March 27, 2017, 20 C.F.R. § 404.1527 applies here.
20 C.F.R. § 404.1527 (2017) ("For claims filed (see § 404.614) before March 27, 2017, the rules
in this section apply. For claims filed on or after March 27, 2017, the rules in § 404.1520c apply.")

1   years after date last insured and that differed from opinions of all doctors); *see also Ball v. Colvin*,

2   607 F. App'x 709 (9th Cir. 2015) (ALJ reasonably concluded that treating psychiatrist's opinion

3   was of minimal relevance where opinion was rendered more than two years after date last insured

4   and there was no evidence that psychiatrist treated claimant prior to date last insured).

5    Mr. Lim also contends that "Ms. Neville had access to all his records and her opinions

6   were based on the record as a whole." Dkt. No. 15 at 10. He provides no support for this

7   contention. Indeed, other than noting that "Mr. Lim is diagnosed with major depressive disorder

8   recurrent episode with psychotic features with anxious stress and OCD," Ms. Neville's opinion

9   statement does not cite to any specific findings in the medical record or reference the medical

10   record in any way. AR 2432–33.

11    Accordingly, the ALJ did not err in giving little weight to Ms. Neville's opinion.

12     **2. Treating nurse practitioner Jessica Yu N.P. and treating psychologist Diane Zacher, Ph.D.**

13    Mr. Lim argues that the ALJ erred in ignoring the opinions of Ms. Yu and Dr. Zacher.

14   Dkt. No. 15 at 12–13. The Commissioner responds that neither Ms. Yu nor Dr. Zacher provided

15   opinions, and therefore the ALJ did not commit error. Dkt. No. 17 at 9–10.

16    For claims filed before March 27, 2017, such as Mr. Lim's, medical opinions are defined

17   as "statements from acceptable medical sources that reflect judgments about the nature and

18   severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and

19   prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or

20   mental restrictions." 20 C.F.R. § 404.1527(a)(1) (2017). As a nurse practitioner, Ms. Yu is not an

21   acceptable medical source.[11] SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006); *see Dale v.*

22

---

[11] Mr. Lim cites to *Taylor v. Comm'r of Soc. Sec.*, 659 F.3d 1228, 1234 (9th Cir. 2011) for the proposition that a nurse practitioner "working close with, and under the supervision of" a doctor may be considered an acceptable medical source. Dkt. No. 15 at 3 n.1. Mr. Lim contends that Ms. Yu worked with his primary care physician ("PCP"), Daniel James Greenwood, M.D. *Id.* However, the portions of the record to which Mr. Lim cites for that proposition do not support that contention. *Id.* (citing AR 258, 362, 1219, 1351, 1362). Those portions note only that Dr. Greenwood was Mr. Lim's PCP who prescribed him migraine medication, and that Mr. Lim's "diagnoses are followed or will be followed by his or her PCP or appropriate specialist." AR 258, 362, 1219, 1351, 1362. The record does not indicate that Ms. Yu worked closely with, was supervised by, or ever even discussed Mr. Lim's mental health with Dr. Greenwood.

United States District Court<br>Northern District of California

*Colvin* 823 F.3d 941, 943 (9th Cir. 2016) (citing 20 C.F.R. § 404.1513(a) & (d)(1)).  Mr. Lim cites

only to Ms. Yu's treatment notes and does not point to any medical source statement or opinion by

Ms. Yu.  Other source opinions "may reflect the source's judgment about some of the same issues

addressed in medical opinions from acceptable medical sources."  20 C.F.R. § 404.1527(f)(1)

(2017).  However, the treatment notes to which Mr. Lim cites are merely Ms. Yu's observations,

not her judgments or opinions regarding what Mr. Lim can or cannot do or what his physical or

mental limitations are.  *See, e.g.*, *Lowry v. Colvin*, No. 13-cv-03304-NC, 2014 WL 3836224, at *5

(N.D. Cal. July 31, 2014) (physician's treatment notes did not constitute a medical opinion

because notes did not contain a subjective assessment of claimant's physical limitations with

regard to his ability to perform functional tasks).  Nor is the "follow-up health questionnaire" Mr.

Lim cites a medical source opinion.  Rather, the PHQ-9 questionnaire reflects Mr. Lim's reported

self-assessment, which Ms. Yu used in treating Mr. Lim.  *See* AR 1332, 1342.

With respect to Dr. Zacher, Mr. Lim's argument suffers from the same defect.  He cites

only to treatment notes from Dr. Zacher that do not reflect a judgment or opinion about Mr. Lim's

capabilities despite impairment or his physical or mental restrictions.  Dkt. No. 15 at 12–13; Dkt.

No. 18 at 7.  Because neither Ms. Yu nor Dr. Zacher rendered opinions upon which the ALJ could

base her decision, there were no opinions for the ALJ to disregard.

Accordingly, the Court denies Mr. Lim's motion for summary judgment and grants the

Commissioner's motion for summary judgment with respect to the ALJ's evaluation of medical

source opinions.

### C.    Medical Expert Testimony

The ALJ's opinion lists the date of disability onset as September 15, 2009, but at the

hearing, Mr. Lim amended his onset date to October 30, 2009.  *Compare* AR 16, 22 *with* AR 29–

30.  Mr. Lim contends that the ALJ erred in not requesting a medical expert or advisor to assist in

determining the date of disability onset.  Dkt. No. 15 at 13–15.

Mr. Lim relies on *Diedrich v. Berryhill*, 874 F.3d 634 (9th Cir. 2017) and SSR 83-20 for

the proposition that where an ALJ determines that disability exists but the evidence is unclear as to

when the disability began, the ALJ should call on a medical expert.  *Id.*  But as the Commissioner

1   correctly observers, that directive only applies when an ALJ makes a finding of disability and the

2   date of onset is not clear.  *Sam v. Astrue*, 550 F.3d 808, 810 (9th Cir. 2008) ("Because the ALJ

3   found that Sam was not disabled '*at any time* through the date of [the] decision'. . . , the question

4   of *when* he became disabled did not arise and the procedures prescribed in SSR 83–20 did not

5   apply.") (emphases original).  Here, the ALJ concluded that Mr. Lim was *not* disabled prior to his

6   date last insured and thus did not reach the question of date of onset.

7        Accordingly, the Court denies Mr. Lim's summary judgment motion and grants the

8   Commissioner's summary judgment motion on this issue.  If, on remand, the ALJ finds Mr. Lim

9   was disabled but cannot determine the date of onset, she may revisit the question of whether to

10   seek the opinion of a medical expert.

11        **D.     Vocational Expert Hypotheticals**

12        Mr. Lim argues that the ALJ erred by not including a description of his functional

13   limitations or the fact that he was subjected to a 5150 hold in December 2012 in the hypothetical

14   questions she asked the vocational expert.  Dkt. No. 15 at 9.  Mr. Lim does not identify any

15   specific limitations that he believes the ALJ should have included or how those limitations may

16   have impacted the ALJ's assessment of his residual functional capacity and ability to perform past

17   relevant work.

18        The Commissioner argues that the ALJ "was not required to include in the hypothetical

19   limitations impairments that were not credible."  Dkt. No. 17 at 7.  This argument is puzzling, as

20   the ALJ made no express findings regarding credibility.  At most, the ALJ observed that Mr.

21   Lim's reports of increasing anxiety and worsening mood resulting from completing his

22   dissertation and preparing to return to work were "inconsistent with his allegations of disability."

23   AR 19.  The Court therefore finds the Commissioner's argument unpersuasive.  *Bray v. Comm'r

24   of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009) ("Long-standing principles of

25   administrative law require us to review the ALJ's decision based on the reasoning and factual

26   findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the

27   adjudicator may have been thinking.").

28        Neither party is entitled to summary judgment on this point.  However, because the ALJ's

United States District Court
Northern District of California

assessment of Mr. Lim's ability to work is premised on her earlier erroneous assessment about the severity of his impairments, the ALJ should reconsider on remand her assessment of Mr. Lim's residual functional capacity and ability to perform his past relevant work.

## IV.     DISPOSITION

"When the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017) (citing *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014)).  On remand, the ALJ must reassess Mr. Lim's medical record as a whole and provide legally adequate reasons for finding Mr. Lim's medically determinable mental impairments severe or not severe.

Based on the foregoing, Mr. Lim's motion for summary judgment is granted in part and denied in part, the Commissioner's cross-motion for summary judgment is granted in part and denied in part, and this matter is remanded for further proceedings consistent with this order.  The Clerk of the Court shall enter judgment accordingly and close this file.

**IT IS SO ORDERED.**

Dated: May 20, 2020

VIRGINIA K. DEMARCHI
United States Magistrate Judge